# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
EDITH M. BUDIK,                                              )
                                                             )
                    Plaintiff,                               )
                                                             )         Civil Action Nos.
          v.                                                 )         11-1268, 11-1865 (RBW)
                                                             )
                                                             )         **ENTERED UNDER SEAL**
UNITED STATES, et al.,                                       )
                                                             )
                    Defendants.                              )
_____)

## MEMORANDUM OPINION

This case, in which the pro se plaintiff, Edith Budik, filed a complaint against the

defendants, the United States and the Secretary of the United States Department of the Air Force,

alleging violations of certain army regulations, the Privacy Act, 5 U.S.C. § 552a (2010), the Fifth

and Fourteenth Amendments to the Constitution of the United States, two statutes governing the

treatment of various military records, 10 U.S.C. § 1102 (2012) and 10 U.S.C. § 1552 (2008), and

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), is currently before the Court

on the Defendants' Amended Motion to Dismiss ("Defs.' Mot.").  For the reasons explained

below, the defendants' motion will be granted.[1]

---

[1] In deciding the motion, the Court considered the following filings:  the plaintiff's First Amended Complaint in 11-cv-1268 ("First Am. Compl."); the plaintiff's Second Amended Complaint in 11-cv-1268 ("Second Am. Compl."); the plaintiff's Complaint in 11-cv-1865 ("2011 Compl."); the defendants' Memorandum of Points and Authorities in Support of Defendants' [Amended] Motion To Dismiss ("Defs.' Mem."); the plaintiff's Response to Defendants' [Amended] Motion To Dismiss ("Pl.'s Opp'n"); and the Defendants' Reply to the Plaintiff's Response to the Defendants' [Amended] Motion To Dismiss ("Defs.' Reply").

# I. BACKGROUND

## A. The Plaintiff's Factual Allegations[2]

### 1. The Plaintiff's Tenure at the Walter Reed Army Medical Center

The plaintiff is a board-certified "diagnostic radiolog[ist] with prior 23-year active and reserve service as a general diagnostic radiologist with the United States Army." 2011 Compl. ¶ 2. Among other hospital positions, she "worked as a staff [r]adiologist at Walter Reed Army Medical Center" ("Walter Reed") from April 6, 2007 until November 4, 2007. Second Am. Compl. ¶ 1. Shortly before the end of the plaintiff's tour of duty at Walter Reed, Colonel ("Col.") Michael Brazaitis, the Chief of Radiology at Walter Reed, "completed a rating of [the p]laintiff's clinical performance dated [November 1, 2007]" using a military performance assessment form for medical personnel called a DA Form 5374. Id. ¶ 11. In the "remarks" section of the DA Form 5374, Col. Brazaitis wrote the following:

> A peer review audit was performed encompassing one week of Neuroradiology cases performed by the provider. Significant discrepancies were identified in 4 of the 53 cases performed by the provider (7.5%). The provider's expertise is in Pediatric Neuroradiology. The cases evaluated reflect the usual workload performed at [Walter Reed], which is predominantly adult and trauma Neuroradiology. If the provider practices outside of her area of expertise, supervision should be provided until such time as performance is deemed acceptable for the case mix at that institution.

Id.

---

[2] This Memorandum Opinion addresses two cases, Budik v. United States, No. 11-1268 (D.D.C. filed Nov. 13, 2009) and Budik v. Donley, No. 11-1865 (D.D.C. filed Oct. 21, 2011), which the Court has consolidated, January 25, 2012 Minute Order, Budik v. United States, No. 11-1268. Because the plaintiff did not file an amended consolidated complaint, and in light of the plaintiff's pro se status, the Court will consider and address the allegations contained in the operative complaints in each case. The Court additionally will consider and address the allegations contained in the First Amended Complaint in Budik v. United States, which is incorporated by reference into the Second Amended Complaint in that same case.

In March 2008, the plaintiff "filed a complaint with the Inspector General at [Walter Reed] for lack of substantiation regarding [Col. Brazaitis's] remarks," alleging that the remarks "constitute[d] an adverse privileging action, [and also did not] afford[] [the p]laintiff due process."  Id. ¶ 13.  The Walter Reed Inspector General's Office responded to the complaint in a July 17, 2008 letter to the plaintiff.  Id. ¶ 14; First Am. Compl., Attachment ("Attach.") 3 (July 17, 2008 Letter).  The letter related the chronology and findings of the investigation conducted by the Walter Reed Inspector General's Office and concluded that "[b]ased on the information gathered during this inquiry, [the plaintiff was] afforded due process during [her] initial credentialing year at [Walter Reed]."  First Am. Compl., Attach. 3 (July 17, 2008 Letter).  The letter additionally stated that further requests for information "should be directed to the Department of the Army Inspector General . . . Records Release Office . . . under the Freedom of Information A[ct]."  Id.

      2.   The Plaintiff's Application for Privileges at Malcolm Grow Medical Center

The plaintiff applied for a "civilian position as a contract, board-certified general diagnostic radiologist at Malcolm Grow Medical Center" ("Malcolm Grow") at Andrews Air Force Base on August 13, 2008, through Malcolm Grow's "contracting agency[,] Sterling Medical."  2011 Compl. ¶ 9.  At the beginning of the process, Sterling Medical requested that the plaintiff "sign an 'Agreement for Service' 'to reserve the position' at" Malcolm Grow.  Id. ¶ 10.

As part of the plaintiff's application, the plaintiff was required to attend a "site visit" at Malcolm Grow, even though such "visits [were] prohibited" and "only telephonic interviews were authorized."  2011 Compl. ¶ 11.  The plaintiff nonetheless attended the visit, and "[m]ost of the time spent during the interview focused on procedures, policies and practices" at Malcolm

Grow.  Id. ¶ 13.  At least part of the visit included "a brief discussion about mammography" for which the plaintiff required a re-certification and which the defendant stated she "could complete . . . on the job."  Id.  It was during the site visit that the "[d]efendant learned of [the p]laintiff's race, color, sex, and age."  Id. ¶ 11.

Malcolm Grow subsequently obtained additional information about the plaintiff and her qualifications from Walter Reed, as well as from another military hospital at which the plaintiff had worked, Landstuhl Regional Medical Center ("Landstuhl Regional").  Id. ¶ 17 (identified in the 2011 Complaint as the "LMRC").   The information was obtained through "collegial channels," as opposed to having been acquired from Sterling Medical.  Id.  Although the DA Form 5374 that Malcolm Grow received from Landstuhl Regional, which was completed by Lieutenant Colonel ("Lt. Col.") Ricanthony Ashley, "contained a derogatory statement," the defendants also had knowledge of another DA Form 5374 completed by Lt. Col. Ashley that was identical to the first form with the exception that it did not contain the derogatory statement.  Id. ¶ 19.  The defendants "questioned why . . . seemingly conflicting references" would be submitted but "did not act on it," even after being informed "that the derogatory statement was forged."[3] Id. ¶ 20.

Malcolm Grow also obtained the uncomplimentary DA Form 5374 from Walter Reed that had been completed by Col. Brazaitis.  Id. ¶¶ 21-23.  In addition, Malcolm Grow obtained another "reference from [Walter Reed]," which contained "[n]o derogatory information whatsoever."  Id. ¶ 24.  No one at Malcolm Grow questioned the "conflicting references."  Id.

---

[3] It was later discovered that the statement was not forged.  Supplemental Attach. to First Am. Compl. at 17-18, No. 11-cv-1268 (D.D.C. Dec. 7, 2011), ECF No. 49 (April 2, 2009 Declaration of Col. Ricanthony Ashley)).  The Landstuhl Regional performance assessment is the subject of another matter currently pending before this Court.

While the plaintiff's application was pending, Malcolm Grow received a telephone call from Col. Les Folio, who provided "a negative reference" regarding the plaintiff.  Id. ¶ 25. According to the plaintiff, Col. Folio "did not have the requisite personal or professional contact with [the p]laintiff to assess [her performance]."  Id. ¶ 26.

The plaintiff was notified that she had been denied privileges to practice at Malcolm Grow on October 8, 2008.  Id. ¶ 27.  The reasons cited included the unfavorable performance assessments received from Walter Reed and Landstuhl Regional, as well as the plaintiff's need to re-qualify in mammography.  Id. ¶ 28.  The plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming unlawful discrimination.  Id., Attach. 2 (EEOC Judgment) at 2.  The EEOC found that the plaintiff "failed to establish by a preponderance of the evidence that any or all of the Claims cited [in the plaintiff's EEOC complaint] amount to a prima facie case of unlawful discrimination in the selection process based on her race, color, or sex."  Id., Attach. 2 (EEOC Judgment) at 10.

### 3.  The Plaintiff's Continued Attempts To Amend her Military Records

In January 2009, the plaintiff met with the Commander at Walter Reed, Col. Norvell V. Coots, MD, to discuss both Col. Brazaitis's remarks on her performance assessment form and the disclosure of that form to Malcolm Grow.  Second Am. Compl. ¶ 15.  Col. Coots indicated "that he would conduct a 15-6 investigation"[4] to review the initial investigation conducted by the Inspector General at Walter Reed.  Id. ¶ 15.  After reviewing the initial investigation, but without performing the 15-6 investigation, id. ¶ 16, Col. Coots informed the plaintiff in an April 23, 2009 letter that he was "satisfied with the validity of the [Inspector General's] investigation

---

[4] A "15-6 investigation" is an investigation conducted pursuant to Army Regulation 15-6 (2006), which "establishes procedures for investigations and boards of officers not specifically authorized by any other directive." Army Reg. 15-6, ¶ 1-1.

and with its results.  Therefore, there will be no need to initiate a new investigation," First Am.
Compl., Attach. 5 (April 23, 2009 Letter).

Through counsel, the plaintiff challenged Col. Coots's determination that a new
investigation was not warranted.[5]  First Am. Compl., Attachs. 6a-6c (June 2, 2009, June 24, 2009
and July 13, 2009 Letters).  Col. Scott F. Young, the Center Judge Advocate at Walter Reed,
stated that "[i]f [the plaintiff] believes that an error or injustice exist[ed]" in her records, "she
may petition the Army Board for Correction of Military Records for relief . . . within 3 years
after [the] alleged error or injustice [was] discovered or reasonably should have been
discovered."  First Am. Compl., Attach. 6b (June 24, 2009 Letter).

The plaintiff had already filed a petition with the Army Board for Correction of Military
Records ("Army Board") in a letter dated June 5, 2009.[6]  2011 Compl. ¶ 30; First Am. Compl.,
Attach. 7 (June 5, 2009 Letter).  The June 5, 2009 letter stated that the "performance evaluation
written by Col. Brazaitis . . . ha[d] adversely affected [her] ability to obtain" a position.  First
Am. Compl., Attach. 7 (June 5, 2009 Letter).  She alleged that the "remarks in section . . . 14" of
the performance assessment were "unsubstantiated," "restrictive," and inconsistent with other
performance evaluations completed during the same time period.  Id.  The plaintiff's request for
correction of her records was denied on August 4, 2009.  Second Am. Compl. ¶ 17; First Am.
Compl., Ex. 8 (August 4, 2009 Letter).

---

[5] Although Loretta Townsend, an attorney with the law firm of Weinstock, Friedman & Friedman, P.A.,
corresponded with the Center Judge Advocate at Walter Reed on behalf of the plaintiff, Ms. Townsend stated in her
July 13, 2009 letter that correspondence from the Center Judge Advocate should be directed to the plaintiff, "as she
is not presently our client in this matter."  First Am. Compl., Attach. 6c (July 13, 2009 Letter) at 2.

[6] It appears from the June 5, 2009 letter that the plaintiff had previously filed a request to amend her military record
with respect to another performance assessment.  First Am. Compl., Attach. 7 (June 5, 2007 Letter).  As previously
noted, that performance assessment, completed by Lt. Col. Ashley, is the subject of another lawsuit before this
Court, and will not be addressed in this memorandum opinion.

Shortly thereafter, on August 12, 2009, the plaintiff filed a judicial complaint against the Department of the Army challenging the Department's failure to provide her with records that she had requested pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Budik v. Dep't of Army, 742 F. Supp. 2d 20, 23-24 (D.D.C. 2010).  Another member of this Court found that, among other documents, the Department of the Army was required to produce to the plaintiff eight documents from Walter Reed, id. at 28, 37, among which were documents from the plaintiff's Provider Credentials File, Second Am. Compl. ¶ 19.  The plaintiff subsequently received a copy of her Provider Credentials File pursuant to the Order issued in Budik, 742 F. Supp. 2d at 40.  Id. ¶ 19; First Am. Compl., Attach. 10 (December 7, 2010 Letter).  However, the "peer review document," i.e., Col. Brazaitis's performance assessment of Col. Budik, was "not contained in the file."  Second Am. Compl. ¶ 19.

On August 4, 2010, the plaintiff filed a request for reconsideration from the Army Board of its August 4, 2009 denial of her initial request to amend her military record.  Second Am. Compl. ¶ 18.  The request for reconsideration was denied on October 27, 2011.  Id.

**B.  The Current Lawsuits**

The plaintiff subsequently filed two lawsuits.  First, she filed a lawsuit relating to the Walter Reed records.  The matter was originally filed against Col. Brazaitis in the Circuit Court for Howard County, Maryland, before being removed to the United States District Court for the District of Maryland.  Notice of Removal at 1-2, No. 11-1268, ECF No. 1.[7]  The District of Maryland granted the defendants' motion to substitute the United States as the appropriate defendant, November 20, 2009 Order at 1, No. 11-cv-1268, ECF No. 11; March 25, 2010 Order

_____

[7] For ease of reference, citations to the documents on the dockets of Budik v. United States, No. 11-1268 (D.D.C. filed Nov. 13, 2009) and Budik v. Donley, No. 11-1865 (D.D.C. filed Oct. 21, 2011) will be referred to by the title of the document, followed by a reference to the docket number  and the ECF number.

at 1, No. 11-1268, ECF No. 21, and then transferred that matter to this Court, July 11, 2011

Order, No. 11-cv-1268, ECF No. 35.  Shortly thereafter, the plaintiff also filed a lawsuit against

the Secretary of the United States Department of the Air Force in response to her non-selection

for the position at Malcolm Grow.

        In these two cases, the plaintiff asserts against the United States and the Secretary for the

United States Department for the Air Force violations of the Privacy Act, improper disclosure of

medical quality assurance records, violations of various military regulations, due process

violations under the Fifth and Fourteenth Amendments to the United States Constitution, and

claims improper refusal to amend her military records, and additionally asserts against the

Secretary of the Department of the Air Force alone unlawful discrimination in violation of Title

VII of the Civil Rights Act of 1964.  2011 Compl. ¶¶ 32-39; Second Am. Compl. ¶¶ 25-34.  She

seeks "all available remedies at law and/or equity."  2011 Compl., Prayer for Relief ¶ 2; Second

Am. Compl., Prayer for Relief ¶ 4.  The Court granted the defendants' motion to consolidate the

two cases, January 25, 2012 Minute Order, No. 11-1268, and they now seek dismissal of the

cases for lack of subject matter jurisdiction and failure to state a claim upon which relief may be

granted, Defs.' Mem. at 2.  In addition to opposing the defendants' motion to dismiss, the

plaintiff is challenging the District of Maryland's order substituting the United States as the

appropriate defendant in the matter concerning her Walter Reed records, Pl.'s Opp'n at 11, and

requests that the matter be transferred back to the Circuit Court for Howard County, Maryland,

Second Am. Compl., Prayer for Relief ¶ 2.

## II.  STANDARDS OF REVIEW

### A.  Treatment of <u>Pro Se</u> Pleadings

The pleadings of <u>pro se</u> parties are to be "liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  However, even though a <u>pro se</u> complaint must be construed liberally, the complaint must still "present a claim on which the Court can grant relief." <u>Chandler v. Roche</u>, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### B.  Rule 12(b)(1) Motion to Dismiss

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." <u>Biton v. Palestinian Interim Self–Gov't Auth.</u>, 310 F. Supp. 2d 172, 176 (D.D.C. 2004); <u>see</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" <u>Am. Nat'l Ins. Co. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." <u>Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992)).

### C.  Rule 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth."  Id. at 679.

## III.  LEGAL ANALYSIS

### A.  Substitution of the United States as the Defendant

The defendants argue that "[t]he issue of whether [Col.] Brazaitis was acting properly within the scope of his employment is  . . . settled" and that "[t]he Maryland district court's decision to transfer was proper and has become the law of the case."  Defs.' Mem. at 23.  The plaintiff responds that her claims against Col. Brazaitis "for fraud, infliction of emotional distress, exceeding authority, and not following Army regulations are inconsistent with [Col. Brazaitis] acting within his scope of duties," Pl.'s Opp'n at 11, and requests that the case be transferred back to Maryland state court, Second Am. Compl., Prayer for Relief ¶ 2.

Under the "law-of-the-case" doctrine, "'the same issue presented a second time in the same case in the same court should lead to the same result.'"  Sherley v. Sebelius, 689 F.3d 776, 780-81 (D.C. Cir. 2012) (quoting LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996)

(original emphasis)).  The "doctrine reaches beyond the court that made the first decision.  It applies just as strongly to coordinate courts."  LaShawn A., 87 F.3d at 1393 n.3 (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).  Although "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  Christianson, 486 U.S. at 817 (internal quotation marks omitted).

On the basis of the representations made in the defendants' Motion to Substitute Defendants, the District of Maryland determined that the United States should be substituted as the defendant in the place of Col. Brazaitis.  November 20, 2009 Order at 1, No. 11-1268, ECF No. 11; March 25, 2010 Order at 1, No. 11-1268, ECF No. 21.  The plaintiff is correct when she argues, Pl.'s Opp'n at 11, that "the Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee."  Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 662 (D.C. Cir. 2006).  However, such a certification "does constitute prima facie evidence that the employee was acting within the scope of his employment.  A plaintiff challenging [the certification] bears the burden of coming forward with specific facts" to rebut it.  Id. (citations and internal quotation marks omitted).  The plaintiff has failed to present specific facts to rebut the District of Maryland's ruling, and instead makes unsupported statements about her causes of action.  See Pl.'s Opp'n at 11.  Accordingly, there is no basis to conclude that there are "extraordinary circumstances" indicating that "the initial decision was clearly erroneous and would work a manifest injustice," Christianson, 486 U.S. at

817 (internal quotation marks omitted).  The Court will therefore not disturb the earlier ruling

substituting the United States in the place of Col. Brazaitis as a defendant in this case.

In part as a consequence of substituting the United States for Col. Brazaitis, the District

of Maryland also transferred the plaintiff's lawsuit concerning Walter Reed to this Court.  July

11, 2011 Memorandum at 3-4, No. 11- 1268, ECF No. 34; July 11, 2011 Order at 1, No. 11-

1268, ECF No.35.  In doing so, the District of Maryland recognized that the plaintiff bears the

burden of showing that her chosen venue is proper.  July 11, 2011 Memorandum at 2-3, No. 11-

1268, ECF No. 34 (citing Bartholomew v. Va. Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir.

1979), overruled on other grounds by Union Labor Life Ins. Co. v. Pinero, 458 U.S. 119 (1982));

see also Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).  And, as the court noted, suits

against the United States or agencies thereof are appropriately filed in any jurisdiction in which

"(1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise

to the claim occurred, or a substantial part of property that is the subject of the action is situated,

or (3) the plaintiff resides if no real property is involved in the action."  July 11, 2011

Memorandum at 3, No. 11-1268, ECF No. 34 (citing 28 U.S.C. §1391(e)).

When deciding to transfer the matter to this Court, the District of Maryland wrote:

> Budik has offered no argument in response to the United States' assertion of
> improper venue.  In this case, the Complaint indicates that Budik resides in the
> District of Columbia. . . . [and] Walter Reed, where the records at issue were
> created and stored, is likewise located in the District of Columbia.  Colonel
> Brazaitis resides in Maryland, but since the United States is the proper
> [d]efendant in this case, he is no more than a potential witness.

Id. at 3.  Here, the plaintiff has failed to present to this Court arguments or evidence of

"extraordinary circumstances" indicating that the District of Maryland's "initial decision

[transferring this action] was clearly erroneous and would work a manifest injustice."

Christianson, 486 U.S. at 817 (internal quotation marks omitted).  Indeed, given the requirements of 28 U.S.C. §1391(e), the Court finds that the District of Columbia is the appropriate venue for the plaintiff's lawsuit concerning her Walter Reed records.  In any event, because courts should be "loathe" to "revisit prior decisions of . . . a coordinate court" in the absence of evidence of "extraordinary circumstances," id., the Court will not disturb the District of Maryland's order transferring the case.

### B.  The Plaintiff's Fifth and Fourteenth Amendment Claims

The defendants argue first that the plaintiff must bring her claim under the Fifth Amendment alone, and not the Fourteenth, and second that the plaintiff's claim must be dismissed because she has no cognizable property interest in either her potential for employment or her reputation.  Defs.' Mem. at 9.  The plaintiff responds that she had a "genuine firm offer" from Malcolm Grow that was "sabotaged by the mishandling of" her performance assessment forms.  Pl.'s Opp'n at 9.

As an initial matter, the defendants are correct that only the Fifth Amendment applies to the plaintiff's constitutional claims in this case.  San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987) (recognizing that the Fourteenth Amendment applies to state actions, whereas the Fifth Amendment applies to actions by the federal government and its agencies).  Accordingly, the Court will treat the plaintiff's claims as arising solely under the Fifth Amendment.

In order to state a cause of action for violation of procedural due process under the Fifth Amendment, the plaintiff must show "(1) a deprivation [by the government]; (2) of life, liberty, or property; (3) without due process of law."  Lightfoot v. Dist. of Columbia, 273 F.R.D. 314,

319 (D.D.C. 2011) (citing <u>Propert v. Dist. of Columbia</u>, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).

"'The first inquiry in every [procedural] due process challenge is whether the plaintiff has been

deprived of a protected interest in 'liberty' or 'property.'  Only after finding the deprivation of a

protected interest do[es the Court] look to see if the [government's] procedures comport with due

process.'" <u>Gen. Elec. Co. v. Jackson</u>, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting <u>Am. Mfrs.</u>

<u>Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 59 (1999)).  The plaintiff alleges that she has been

deprived of property in the form of her "opportunity to benefit from gainful employment," as

well as her "reputation in the medical community," Second Am. Compl. ¶ 3, and so the Court

must determine whether either of the alleged deprivations constitutes a protected property

interest, <u>see</u> <u>Gen. Elec. Co.</u>, 610 F.3d at 117.

The United States Supreme Court has held that "injury to reputation itself [is] not a

'liberty' interest protected" by the Constitution, even where the government's "statements . . .

would undoubtedly damage the reputation of one in [the plaintiff's] position, and impair [her]

future employment prospects." <u>Siegert v. Gilley</u>, 500 U.S. 226, 233-34 (1991).  In <u>Siegert</u>, the

plaintiff, a clinical psychologist, agreed to resign from his position at a federal medical facility

after hospital officials indicated that they were preparing to terminate his employment.  <u>Id.</u> at

227-28.  After his resignation, the plaintiff acquired employment at a United States Army

hospital in Bremerhaven, West Germany.  <u>Id.</u> at 228.  In order to receive the appropriate

credentials to practice at the hospital, the plaintiff was required to submit a "Credential

Information Request Form" to his former employer.  <u>Id.</u>  The plaintiff's prior supervisor

responded to the request with a letter in which he stated that the plaintiff was "both inept and

unethical, perhaps the least trustworthy individual I have supervised in my thirteen years" at the

institution from which the plaintiff had resigned.  Id.  The plaintiff was subsequently denied his

credentials and rejected for a position with another United States Army Hospital in Stuttgart,

Germany.  Id.  Thus, he remained at the hospital in Bremerhaven, where he was given

provisional credentials, which limited him to working only with adults.  Id. at 228-29.  The

plaintiff then filed suit against his previous supervisor, alleging that his "letter had caused him to

lose his post as a psychologist at the Bremerhaven Army Hospital, and had rendered him unable

to obtain other appropriate employment in the field."  Id. at 229.

As the plaintiff in Siegert, the plaintiff here complains of critical and uncomplimentary

remarks made by a supervisor in her performance assessment, and she alleges that her reputation

and future job prospects have been damaged as a result of those remarks.  Second Am. Compl.

¶¶ 2-3, 11.  However, as the Supreme Court made clear in Siegert, such facts do not provide the

basis for a deprivation of a protected liberty interest.  Siegert, 500 U.S. at 233-34.  Accordingly,

the plaintiff has failed to state a claim against her prior employer, and the Court must dismiss her

Fifth Amendment procedural due process claim.[8]

---

[8] It is unclear from the plaintiff's complaint whether she intended to assert a cause of action for procedural or substantive due process.  Because the facts lend themselves more readily to a procedural due process analysis, the Court has construed the plaintiff's complaint as alleging a cause of action for a violation of procedural due process.  However, even if the Court were to construe the plaintiff's claim as one for a violation of substantive due process, the outcome would be the same.  This Circuit has stated that "[s]ubstantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests."  Wash. Teachers' Union Local No. 6 v. Bd. of Educ. of Dist. of Columbia, 109 F.3d 774, 781 (D.C. Cir. 1997) (citation and quotations omitted).  The conduct complained of in this case hardly constitutes "oppression" and cannot be said to "shock the conscience" or be "legally irrational."  See id. at 777-78, 781-82 (finding no violation of substantive due process rights where certain rules allowed school principals "to make subjective, virtually unreviewable decisions" with respect to their teachers, including ranking the teachers' performance and selecting which teachers to fire based on those performance assessments).

**C.  The Plaintiff's Confidentiality of Medical Quality Assurance Records Claim**

The defendants move to dismiss the plaintiff's claim of improper disclosure of medical quality assurance records under 10 U.S.C. § 1102 on two grounds.  First, the defendants argue that, to the extent that the plaintiff seeks monetary damages, the United States has not waived sovereign immunity based on an alleged violation of 10 U.S.C. § 1102.  Defs.' Mem. at 15-16. The defendants further argue that § 1102 designates the records at issue as privileged and explicitly bars the government from producing those records in this litigation.  Id. at 17-19.  The plaintiff does not respond to the defendants' sovereign immunity argument, and asserts in response to their privilege argument that an exception in § 1102 accords this Court the power to review the records.  Pl.'s Opp'n at 10-11.

Under § 1102, "[m]edical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program are confidential and privileged," and are generally protected from disclosure.  10 U.S.C. § 1102(a).  The statute in turn defines "medical quality assurance records" as "records . . . and reports that emanate from quality assurance program activities . . . and are produced or compiled by the Department of Defense as part of a medical quality assurance program," 10 U.S.C. § 1102(j)(2), and "medical quality assurance programs" as "any peer review activity carried out . . . by or for the Department of Defense to assess the quality of medical care, including activities conducted by individuals," id. § 1102(j)(1).  There is no dispute that the records at issue in this case are medical quality assurance records emanating from a medical quality assurance program.  Pl.'s Opp'n at 10-11; Defs.' Mem. at 17-18.

The statute does not waive the United States's sovereign immunity to suits alleging improper disclosure of medical quality assurance records, but instead provides for the award of fines for "[a]ny person['s] . . . willful[] disclos[ure] . . . other than as provided in this section." Id. § 1102(k) (emphasis added).  Nowhere does the statute provide for fines or other relief for any disclosure by the United States.  Because "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction," U.S. v. Mitchell, 463 U.S. 206, 212 (1983), the Court does not have jurisdiction to entertain the plaintiff's claims for monetary relief under 10 U.S.C. § 1102.  The plaintiff's claim is therefore dismissed, insofar as it seeks money damages.

The plaintiff, however, seeks more than money damages.  Second Am. Compl., Prayer for Relief ¶ 4 (seeking "all available remedies at . . . equity").  The Court does, therefore, have jurisdiction to entertain the plaintiff's claims insofar as she seeks injunctive or declaratory relief. See Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (2006) ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."); Cohen v. United States, 650 F.3d 717, 723 (D.C. Cir. 2011) ("[T]here is no doubt Congress lifted the bar of sovereign immunity in actions not seeking money damages."). Although the defendants contend that the plaintiff's failure to reference the APA in her complaint somehow makes it merely "arguable whether the [APA] provides an independent waiver for sovereign immunity for injunctive or declaratory relief," Defs.' Mem. at 16 n.4, this Circuit has stated that "the 'APA's waiver of sovereign immunity applies to any suit whether

under the APA or not,'" <u>Trudeau v. FTC</u>, 456 F.3d 178, 186 (D.C. Cir. 2006) (citation omitted).

Accordingly, the Court must determine whether officials at Walter Reed violated 10 U.S.C.

§ 1102 by disclosing the plaintiff's performance assessment records to officials at Malcolm

Grow.

There are two potentially relevant exceptions to the statute's general protection of

medical quality assurance records from disclosure.  First, disclosure of medical quality assurance

records is authorized:

> [t]o a hospital, medical center, or other institution that provides health care
> services, if such medical quality assurance record . . . is needed by such institution
> to assess the professional qualifications of any health care provider who is or was
> a member or employee of the Department of Defense and who has applied for or
> been granted authority or employment to provide health care services in or on
> behalf of such institution.

10 U.S.C. § 1102(c)(1)(D).  Second, disclosure is authorized "[t]o an officer, employee, or

contractor of the Department of Defense who has a need for such record . . . to perform official

duties."  <u>Id.</u> § 1102(c)(1)(E).

The plaintiff's allegations make clear that the disclosure of the records at issue falls

within the plain terms of both § 1102(c)(1)(D) and § 1102(c)(1)(E).  Second Am. Compl. ¶ 2

("The actual military form, the DA [Form] 5374, was shown to a prospective employer, Malcolm

Grow Medical Center."); 2011 Compl. ¶¶ 16-24 (describing Malcolm Grow's requests for

employment references and performance assessment forms in connection with the plaintiff's

application for employment).  Although the plaintiff points to her "status as a civilian applicant"

as somehow removing her records from the purview of the statute's exceptions, Second Am.

Compl. ¶ 15, her civilian status does not change the permissibility of the disclosure.  10 U.S.C.

§ 1102(c)(1)(D) refers to the disclosure of medical quality assurance records pertaining to "health care providers," who are defined as "any military <u>or civilian</u> health care professional who, under regulations of a military department, is granted clinical practice privileges to provide health care services in a military medical . . . facility."  10 U.S.C. § 1102(j)(3) (emphasis added). And § 1102(c)(1)(E) does not qualify the types of medical quality assurance records that may be permissibly disclosed within the Department of Defense.[9]

Because the medical quality assurance records relating to the plaintiff were disclosed in accordance with § 1102(c)(1)(D) and § 1102(c)(1)(E), the plaintiff's claims for equitable relief for alleged violations of 10 U.S.C. § 1102 are dismissed.

### D.  The Plaintiff's Privacy Act Claim

The plaintiff alleges that "[b]y releasing the DA [F]orm 5374, the [defendants were] in contravention [of] the Privacy Act, 5 U.S.C. [§] 552a, . . . as the DA [Form] 5374 was not authorized for disclosure."  Second Am. Compl. ¶ 4.  The defendants move to dismiss the plaintiff's Privacy Act claim as an impermissible collateral attack on an agency personnel decision, and argue also that the disclosure falls within the "routine use" exception to the Privacy Act, and that, in any event, the plaintiff consented to the release of the records at issue.  Defs.' Mem. at 29-34.  The plaintiff responds that the records are "protected from disclosure," were not "required document[s] . . . in the credentialing process," and were exchanged "between departments of the [Department of Defense] for other than credentialing purposes."  Pl.'s Opp'n at 14-15.

---

[9] Indeed, § 1102(c)(1)(E) might well permit disclosure outside of the Department of Defense, as well.  The exception provides for disclosure under the appropriate circumstances to "officer[s], employee[s], or <u>contractor[s]</u> of the Department of Defense."  § 1102(c)(1)(E) (emphasis added).  A contractor, despite being connected to the Department of Defense by virtue of a government contract, would not necessarily be considered an entity within the Department of Defense.

The Privacy Act, which governs the manner in which federal agencies collect and maintain information about individuals, prohibits an agency from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). Agencies are not required to submit written requests or obtain prior consent where the disclosure is made "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties," or "for a routine use as defined in subsection (a)(7) of this section." Id. §§ 552a(b)(1), (3). Subsection (a)(7), in turn, states that "the term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." Id. § 552a(a)(7). An agency is required to publish in the Federal Register notice of the disclosures that it makes pursuant to the "routine use" exception. Id. §§ 552a(b)(3), (e)(4)(D). "The government must . . . demonstrate both 'compatibility' and publication in the Federal Register in order to successfully invoke the routine use exception." Radack v. DOJ, 402 F. Supp. 2d 99, 105 (D.D.C. 2005) (citing Dep't of the Air Force v. Fed. Labor Relations Auth., 104 F.3d 1396, 1401-02 (D.C. Cir. 1997)).

On February 2, 2000, the Secretary of Defense published a "[n]otice to add a system of records" as required by § 552a(e)(4)(D) of the Privacy Act. 65 Fed. Reg. 4947-01, 4947 (Feb. 2, 2000). The notice detailed the creation of the "Medical Credentials/Risk Management Analysis System," which was implemented in order to, among other things, "manage credentials and privileges of health care providers in the Military Health System." Id. The Medical Credentials/Risk Management Analysis System contains information pertaining to "all

[Department of Defense] Medical Treatment Facility . . . health care providers," including

"'medical quality assurance records' if [those records were] produced or compiled by the

Department of Defense incident to an activity to assess the quality of medical care, including

activities conducted by individuals, military medical or dental treatment facility committees, or

other review bodies responsible for . . . credentials." Id. The notice explicitly contemplates

disclosure—both within and outside of the Department of Defense—of the categories of records

maintained in the Medical Credentials/Risk Management Analysis System

> [t]o a hospital, medical center, or other institution that provides health care
> services, if such medical quality assurance record or testimony is needed by such
> institution to assess the professional qualifications of any health care provider
> who is or was a member of the [Department of Defense] and who has applied for
> or been granted authority or employment to provide health care services in or on
> behalf of such institution.

Id.

The type of record at issue in this case, a DA Form 5374, Second Am. Compl. ¶¶ 4, 26,

is described by United States Army regulations as a "performance assessment" form, which is

used by supervisors in "complet[ing] periodic clinical performance evaluations based on [an]

individual's experience and competency," Army Reg. 40-68 ¶ 5-3(c)(3). As to whether the

defendants' disclosure of the plaintiff's performance assessment form was compatible with the

use for which it was collected, the defendants assert, Defs.' Mem. at 2, 35, and the plaintiff does

not deny, Pl.'s Opp'n at 14-15, that the purpose of a DA Form 5374 is to assess the plaintiff's

performance. And the plaintiff rebuts only in a conclusory fashion the defendants' contention

that the disclosure of the form was for the purpose of allowing a prospective employer within the

same agency to assess the plaintiff's performance. Although the plaintiff argues that the

performance assessment was protected from disclosure under 10 U.S.C. § 1102, Pl.'s Opp'n at

10-11, 14-15, this is not the case, as discussed above.  The Court thus finds that the disclosure of the information was compatible with the purpose for which the information was collected, namely to "manage credentials and privileges of health care providers in the Military Health System." 65 Fed. Reg. at 4947; <u>see also</u> <u>Radack</u>, 402 F. Supp. 2d at 105-06 (finding that the government had satisfied the compatibility requirement of the routine use exception where the government's disclosure of information comported with the reasons stated in the Federal Register for the compilation of the records).

As to the publication requirement, a performance assessment form such as the DA Form 5374 undoubtedly falls within the category of a record "produced or compiled by the Department of Defense incident to an activity to assess the quality of medical care," 65 Fed. Reg. at 4947, and thus the defendants have satisfied the publication requirement of § 552a(b)(3) of the Privacy Act, <u>see</u> <u>Radack</u>, 402 F. Supp. 2d at 105-06 (finding the publication requirement satisfied where the government published notice in the Federal Register of "the categories of individuals covered by the system, the categories of records in the system, the system's purpose, and the routine uses of records maintained in the system").

Because the defendants' disclosure of the information being challenged by the plaintiff falls within the routine use exception of § 552a(b)(3), the Court must dismiss the plaintiff's Privacy Act claim.

### E.  The Federal Tort Claims Act

Insofar as the plaintiff has alleged tort claims, Second Am. Compl. ¶¶ 20-21, the defendants argue that the Court lacks jurisdiction to hear those claims because they are barred by the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 2671-2680 (2006), and that, in any

event, the plaintiff has failed to exhaust her administrative remedies as to any such claims. Defs.' Mem. at 25-26.  The plaintiff responds that her claims are not barred by the FTCA and that she exhausted her administrative remedies by completing the claims procedure available to her through the Army Board.[10]  Pl.'s Opp'n at 12.  The plaintiff does not dispute the defendants' characterization of her tort claim as one for defamation, Defs.' Mem. at 25-26; Pl.'s Opp'n at 12, but she does additionally make reference to "constitutional tort claims," Pl.'s Opp'n at 12.

The United States is generally immune from suit unless it explicitly consents, see Mitchell, 463 U.S. at 212, and the FTCA is an example of Congress' waiver of sovereign immunity.  Under the FTCA, the United States consents to suit in federal district court for certain, but not all, tort claims.  See, e.g., Richards v. United States, 369 U.S. 1, 6 (1962).  The FTCA does not waive sovereign immunity for "[a]ny claim arising out of . . . libel [or] slander," 28 U.S.C. § 2680(h), or for constitutional torts, Zakiya v. United States, 267 F. Supp. 2d 47, 55-56 (D.D.C. 2003).  Thus, this Court does not have jurisdiction to hear the plaintiff's claims regardless of whether the plaintiff's allegations are understood as stating a cause of action for defamation or for constitutional torts.  Accordingly, the Court grants the defendants' motion to dismiss the plaintiff's tort claims.

### F.  The Plaintiff's 10 U.S.C. § 1552 Claim

Although the defendants do not directly address the plaintiff's allegations that the defendants "improperly failed to amend [her] records and failed to comply with their own regulations pursuant to [Army Regulation] 15-185 and [10 U.S.C. § 1552]," Second Am. Compl. ¶ 32, the defendants have asked the Court "to dismiss this case" in its entirety, Defs.' Mot. at 1.

---

[10] The plaintiff also argues that Col. Brazaitis is the proper defendant.  However, as discussed above, the District of Maryland properly substituted the United States for Col. Brazaitis as a defendant in this suit.

The defendants also argue generally that sovereign immunity has not been waived for any of the plaintiff's statutory causes of action, and that the plaintiff has also failed to state a claim in this regard.  Defs.' Mem. at 1-2.

Under 10 U.S.C. § 1552, "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  A "military" record is defined as "a document or other record that pertains to . . . an individual member or former member of the armed forces."  Id.  Any corrections to military records "shall be made by the Secretary acting through boards of civilians of the executive part of that military department," id., which, in this case, is the Army Board, Army Reg. 15-185 ¶ 2-1 (2006).

The statute does not waive the United States's sovereign immunity to suits alleging failure of a board of civilians convened under 10 U.S.C. § 1552 to correct military records.  10 U.S.C. § 1558 (providing for judicial review only of actions taken by or regarding "special boards" and "selection boards," as defined therein).  Again, because "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction," Mitchell, 463 U.S. at 212, the Court does not have jurisdiction to entertain the plaintiff's claims for monetary relief under 10 U.S.C. § 1552.  The plaintiff's claim is dismissed insofar as it seeks money damages.

However, because the plaintiff also seeks "all available remedies at . . . equity," Second Am. Compl., Prayer for Relief ¶ 4, the Court has jurisdiction to address the plaintiff's claim insofar as she seeks injunctive or declaratory relief.  See 5 U.S.C. § 702 (2006); Cohen, 650 F.3d at 723; Trudeau, 456 F.3d at 186.

"[I]t is generally understood that 'decisions regarding the correction of military records are reviewable under the 'arbitrary and capricious' standard of [Administrative Procedure Act] § 706.'" Coburn v. McHugh, 679 F.3d 924, 929 (D.C. Cir. 2012) (citations omitted). "The [C]ourt need only determine whether the . . . decision making process was deficient, not whether [the] decision was correct, . . . and must uphold the [Army] Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) (citations and quotation marks omitted). The Court is "guided by the 'strong but rebuttable presumption that administrators of the military . . . discharge their duties correctly, lawfully, and in good faith.'" Coburn, 679 F.3d at 929 (citation omitted).

This Circuit has recognized that because the language of 10 U.S.C. § 1552(a) "fairly exudes deference" to the Secretary, decisions of the Army Board are evaluated by an "unusually deferential application of the 'arbitrary or capricious' standard." Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Although the "unusually deferential" standard does not make the Army Board's decisions "utterly unreviewable, . . . only the most egregious decisions may be prevented." Id. at 1514-15. Accordingly, the Army Board's decision "need not be 'a model of analytic precision,'" but "[it] 'must minimally contain a rational connection between the facts found and the choice made.'" Wilhelmus v. Geren, 796 F. Supp. 2d 157, 163 (D.D.C. 2011) (quoting Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). In this way, the deferential standard ensures that the Court does not "substitute its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins., Co, 463 U.S. 29, 43 (1983), or "supply a reasoned basis for the agency's decisions that the agency itself has not offered,"

Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 850 (D.C. Cir. 1993) (internal

citation omitted).  Rather, "the [C]ourt ... ensure[s] that the agency 'examined the relevant data

and articulate[d] a satisfactory explanation for its action,'" Calloway v. Brownlee, 366 F. Supp.

2d 43, 54 (D.D.C. 2005) (citing Riley, 10 F.3d at 850), by limiting its review to "the

administrative record already in existence [and] not some new record made initially in the

reviewing court," Wilhelmus, 796 F. Supp. 2d at 161; see Camp v. Pitts, 411 U.S. 138 (1973).

        "A 'fundamental' requirement of administrative law is that an agency 'set forth its

reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency

action."  Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Roelofs v.

Sec'y of the Air Force, 628 F.2d 594, 599 (D.C. Cir. 1980)).  This requirement is codified in the

APA, which requires an agency to provide "a brief statement of the grounds for denial"

whenever the agency "den[ies] in whole or in part . . . a written application, petition or other

request of an interested person made in connection with any agency proceeding," unless the

agency is "affirming a prior denial or . . . the denial is self-explanatory."  Roelofs, 628 F.2d at

600 (citing 5 U.S.C. § 555(e)).  "This requirement not only ensures the agency's careful

consideration of such requests, but also gives parties the opportunity to apprise the agency of any

errors it may have made and, if the agency persists in its decision, facilitates judicial review."

Tourus Records, 259 F.3d at 737.

        Here, the Army Board set forth its reasoning for denying the plaintiff's request for

removal of the contested performance assessment from her record in a single-spaced, nine and a

half page "Record of Proceedings."  First Am. Compl., Attach. 8 (July 30 2009 Record of

Proceedings ("Record of Proceedings")).  In evaluating the plaintiff's request, the Army Board

considered the evidence provided by the plaintiff, including her service record with the United

States Army Reserve; her employment with various military hospitals; the DA Form 5374

completed by Col. Brazaitis; and a June 5, 2009 letter from the plaintiff to the Army Board,

which had as attachments a number of additional relevant documents.  Id. at 1-4.

The Army Board also considered the requirements outlined in the relevant Army

Regulation, Medical Services Clinical Quality Management, Army Reg. 40-68 (2009).  First Am.

Compl., Attach. 8 (Record of Proceedings) at 4, 6-8.  The "regulation establishes policies,

procedures, and responsibilities for the administration of the Army Medical Department . . .

Clinical Quality Management Program."  Army Reg. 40-68 ¶ 1-1.  In accordance with that

regulation, a healthcare provider's performance is subject to a "competency assessment,"

whereby the provider's "[i]mmediate supervisors . . . are responsible for assessing, maintaining

and improving staff competency through an ongoing series of activities."  First Am. Compl.,

Attach. 8 (Record of Proceedings) at 7.

The Army Board ultimately denied the plaintiff's request because "there is no evidence,

and the [plaintiff] . . . provided none, to show that her supervisor did not comply with the

regulatory requirements of assessing her in a fair and unbiased manner."  Id. at 9.  The Army

Board further found that the plaintiff's arguments "address[ed] her dissatisfaction with the

assessment and the impact the contested [performance assessment] forms may have had on her

potential employment, but fail to show any material error, inaccuracy, or injustice related to the

assessments at the time they were rendered."  Id.

The plaintiff twice requested reconsideration of the Army Board's decision, and each

time, the Army Board reaffirmed its position.  Supplemental Attach. to First Am. Compl. at 2-7,

No. 11-1268, ECF No. 49 (October 25, 2011 Army Board for Correction of Military Records, Record of Proceedings).  In doing so, the Army Board relied not only on the evidence before it, but also on an advisory opinion obtained from the Office of the Staff Judge Advocate at the United States Army Medical Command, a component of the Department of the Army. Supplemental Attach. to First Am. Compl. at 8-13, No. 11-1268, ECF No. 49, (April 1, 2011 Advisory Opinion Letter).

Given the Army Board's thorough consideration of the evidence and the applicable regulations, the plaintiff has failed to show that the "decision making process was deficient." Kreis, 406 F.3d at 686.  Instead, there is a "rational connection between the facts found and the choice made."  Wilhelmus, 796 F. Supp. 2d at 163 (citation and quotation marks omitted).  The plaintiff did not allege that her competence assessment or peer review was improperly conducted, and she did not provide evidence to that effect.  Rather, the plaintiff's request for correction of her record stemmed from her allegations that "she was never counseled on staff interaction that resulted in several complaints," and that "she has never been shown documentation to substantiate the remarks entered by [Col. Brazaitis]" on the performance assessment form.  First Am. Compl., Attach. 8 (Record of Proceedings) at 1-2.  She further pointed to other evaluations and personnel files that "[made] laudatory remarks" and otherwise confirmed her competence as a diagnostic radiologist.  First Am. Compl., Attach. 8 (Record of Proceedings) at 2.

It is not necessarily the case that Col. Brazaitis's failure to "counsel[]" the plaintiff or "substantiate the remarks" with documentation aside from the performance assessment itself, id., was indicative of unfair or unbiased treatment warranting the removal of the performance

assessment from the plaintiff's file.  Indeed, the Advisory Opinion Letter relied upon by the

Army Board specifically noted that "there is no requirement [in the Army Regulations] to

provide substantiating evidence with the DA Form 5374."  Supplemental Attach. to First Am.

Compl. at 10, No. 11-1268, ECF No. 49 (April 1, 2011 Advisory Opinion Letter).  Neither is it

necessarily the case that Col. Brazaitis's uncomplimentary remarks were the result of some sort

of bias against the plaintiff.  Performance assessments are not always laudatory.  That the Army

Board refused to remove Col. Brazaitis's remarks in the absence of specific evidence of

wrongdoing on his part does not strike the Court as the sort of "egregious decision[]" that should

be overturned.  Kreis, 866 F.2d at 1514-15; see Mueller v. Winter, 485 F.3d 1191, 1198 (D.C.

Cir. 2007) (finding that Board for Correction of Naval Records did not make an arbitrary and

capricious decision in denying the plaintiff's request to amend his evaluation where the Board

was "unable to find specific information to justify the . . . revision of [the plaintiff's]

evaluation").

    Accordingly, and in keeping with the "unusually deferential application of the 'arbitrary

or capricious' standard" owed to the Army Board, Kreis, 866 F.2d at 1514, the Court must

dismiss the plaintiff's 10 U.S.C. § 1552(a) claim.

### G.  The Plaintiff's Title VII Claim Against the Secretary of the Department of the Air Force

    The defendants argue that the plaintiff's Title VII claim, which she asserts only against

the Secretary of the Department of the Air Force in relation to her application to work at

Malcolm Grow, should be dismissed for failure to allege all of the required elements.  Defs.'

Mem. at 35.  The plaintiff responds that she has presented a prima facie case of discrimination.

Pl.'s Opp'n at 15-16.

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's race, color, . . . [or] sex."  42 U.S.C. § 2000e-2(a).  A plaintiff makes a <u>prima facie</u> case of Title VII employment discrimination where she shows that she (1) is a member of a protected class; (2) was qualified for the position she sought; (3) was rejected despite being qualified for the position; and (4) under circumstances raising an inference of discrimination, the employer continued to seek out individuals with qualifications similar to those of the plaintiff to fill the position.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  Although an employee need not plead a <u>prima facie</u> case of discrimination, she must still allege facts that make her claim more than mere speculation.  <u>Jones v. Air Line Pilots Ass'n, Int'l</u>, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 5141 (2002)).  In order to state a claim under Title VII, the plaintiff must tie her employer's refusal to hire her to her membership in a protected class.  <u>See, e.g.</u>, <u>Potts v. Howard Univ. Hosp.</u>, 258 F. App'x 346, 347 (D.C. Cir. 2007) ("Because racial discrimination in employment is a claim upon which relief may be granted, . . . 'I was turned down for a job because of my race' is all a complaint has to state in order to survive a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." (citation omitted)).

As an African American woman, 2011 Compl., Attach. 2 (March 26, 2010 EEOC Order Entering Judgment) at 4, the plaintiff is a member of at least two protected classes, 42 U.S.C. § 2000e-2(a), and she asserts that she was not hired as a diagnostic radiologist by Malcolm Grow, 2011 Compl. ¶¶ 27, 39.  However, nowhere in the plaintiff's complaint does she state that she was not hired <u>because</u> <u>of</u> her membership in a protected class.  Rather, the plaintiff alleges that Malcolm Grow "failed to hire [her] based on conflicting non-legitimate reasons," 2011

Compl. ¶ 39, a reference to the conflicting statements in her performance assessments, id. ¶¶ 19-22, 24.  And the documents attached to the complaint, which the Court may consider, see EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997), also show that she was not hired by Malcolm Grow because of concerns raised in her performance assessments, e.g., Supplemental Ex. to Second Am. Compl. at 2, No. 11-cv-1268, ECF No. 62 (April 2, 2009 Declaration of Judith Dawn Colonna) (stating that Malcolm Grow decided not to hire the plaintiff because she "lacked independent mammography skills" and her "references were less than desirable").

It is possible to base a non-selection claim on "improperly low performance rating[s]." See, e.g., Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003).  The plaintiff here, however, has already pursued amendment of her performance assessment form through the Army Board, and as discussed above, the Court has found that the Army Board did not act in an arbitrary or capricious manner in finding no basis to require that the form be amended.  And, in any event, while "Title VII is violated when an employing organization uses discriminatory evaluations of an employee which were prepared by its own supervisory personnel," Stoller v. Marsh, 682 F.2d 971, 976 (D.C. Cir. 1982), that is not the case here; the performance assessments were completed by supervisory personnel at hospitals other than Malcolm Grow.  In particular, they were completed by supervisory personnel at Walter Reed, which is part of the Department of the Army, whereas Malcolm Grow is a part of the Department of the Air Force.  While both institutions are military hospitals, they are part of separate agencies with separate supervisory personnel for purposes of employment related issues.  See, e.g., Pervez v. Dep't of Navy, 193 F.3d 1371, 1374 (Fed. Cir. 1999) ("The fact that . . . two [military] departments are also part of

the Department of Defense is not inconsistent with their treatment as separate agencies for personnel purposes."); <u>Francis v. Dep't of Navy</u>, 53 M.S.P.R. 545, 549 (1992) ("[T]he organizational history of the Department of Defense indicates that the military service departments were intended to function—at least, with respect to personnel matters—with the independence that generally characterizes executive departments outside the Department of Defense, rather than the limited kind of independence that generally characterizes organizations within those departments.").

The plaintiff refers in her opposition brief to the requirement that she attend a "site visit" at Malcolm Grow, the failure to provide certain documents to her, and the manner in which the performance assessment forms were transmitted from Landstuhl Regional and Walter Reed to Malcolm Grow as evidence of discrimination. Pl.'s Opp'n at 15-17. None of these facts save her Title VII claim.

As to the site visit, the plaintiff alleges that Malcolm Grow "learned of [the p]laintiff's race, color, sex, and age" when she attended the site visit at that institution. 2011 Compl. ¶ 11. She further contends that such visits were "prohibited," and that Malcolm Grow normally requires only telephone interviews during the hiring process. Id. Even if true, it is unclear how requiring the plaintiff to attend a site visit could have been discriminatory if Malcolm Grow did not, as the plaintiff states in her complaint, know of her status as a member of a protected class when the site visit requirement was imposed, but rather only until <u>after</u> she arrived for the site visit.

Neither is it clear that Malcolm Grow's failure to provide the plaintiff with "a copy of the signed contractual agreement," Pl.'s Opp'n at 16, was the product of discrimination. The

plaintiff alleges in her complaint that she was not provided with a signed copy of the "Agreement for Service" as promised in a letter from Sterling Medical.  See 2011 Compl. ¶ 10; id. Attach. 1 (August 14, 2008 Letter) at 1.  She does not allege, however, that not having the document somehow prejudiced her during the hiring process, and there is no indication that the failure to provide the plaintiff with a copy of the document was anything other than the result of lost or misplaced paperwork.[11]

Finally, as to the transmission of the performance evaluations, they were properly disclosed within the Department of Defense and to hospital officials as permitted by statute and as discussed above.

The plaintiff's complaint and opposition brief not only fail to connect her membership in a protected class with Malcolm Grow's failure to hire her, but also allege conduct that is neither facially discriminatory nor lends itself to an inference of discrimination.  While the plaintiff might be correct that the hiring process was somewhat irregular, she has not pled facts suggesting that she was not hired because of her race, sex, color, or age.  Accordingly, the Court must dismiss the plaintiff's Title VII claim.

---

[11] The plaintiff appears to mistake the letter and the contractual agreement for a firm offer of employment. However, the letter makes no reference to "reserv[ing] the position" for the plaintiff as alleged in the complaint. Compare id. ¶ 10, with id., Attach. 1 (August 14, 2008 Letter) at 1.  Instead, the letter states that the plaintiff was required to complete a "credential packet and background check application."  Id., Attach. 1 (August 14, 2008 Letter) at 1.  The further requirement indicates that the plaintiff did not receive a firm offer of employment that was subsequently revoked after Malcolm Grow learned of her race or gender; rather, it indicates only that the application process was on-going.  It was not until after Malcolm Grow received negative references and poor performance evaluations that the decision was made to not hire the plaintiff.  2011 Compl. ¶¶ 18-27.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the defendants' amended motion to dismiss.

**SO ORDERED** this 7th day of March, 2013.[12]

REGGIE B. WALTON
United States District Judge

---

[12] The Court will contemporaneously issue an Order consistent with the Memorandum Opinion.